[Civ. No. 16691. Fourth Dist., Div. One. Nov. 30, 1978.]

QUENTIN R. DePUY, Plaintiff and Respondent, v.
BOARD OF RETIREMENT OF THE SAN DIEGO COUNTY
EMPLOYEES RETIREMENT ASSOCIATION,
Defendant and Appellant.

## COUNSEL

Donald L. Clark, County Counsel, and Yves A. Hebert, Deputy County Counsel, for Defendant and Appellant.

Carlson & Thiessen and Robert G. Carlson for Plaintiff and Respondent.

## OPINION

**COLOGNE, Acting P. J.**—Quentin R. DePuy, employed by the County of San Diego, petitioned the superior court for a writ of mandate pursuant to Code of Civil Procedure section 1094.5 to review the decision of the Board of Retirement of the San Diego County Employees Retirement Association (Board). The Board had granted him a nonservice-connected disability retirement, but expressly denied the disability was service connected. The superior court granted the writ, ordering the Board to grant DePuy a service-connected disability retirement pension. The Board appeals.

DePuy was first employed as a deputy sheriff in July 1965 and was a patrol officer until October 1968. At that time he was assigned to a selective enforcement detail working beach patrol, mountain patrol and detective assignments for a year.

In October 1969, DePuy was transferred to the vice and intelligence section where he served continuously until May 25, 1974, except for one year in 1972-1973 when he received a special assignment to the organized crime unit of the district attorney's office. In July 1974 he was transferred to jail duty because, according to the deputy's immediate superior, he was the least productive member of the section and was a supervision problem. Between July 4, 1974, and January 22, 1976, he did not work but took sick leave, vacation time, his accumulated compensatory time and leave without pay.

DePuy complains he is lethargic, nervous, needs Elavil to get through the day, has no desires, suffers from headaches, sleeps poorly, cannot concentrate; and has violent feelings toward others, stomach cramps, vomiting and uncontrollable temper. He asserts these conditions arose as a result of altercations with suspects, activities involving physical danger to himself, long hours of overtime work, undercover observation of subversive activities and militants, dealing with panic and riot situations, being required to spy on the district attorney's office and other law enforcement officers, and lack of respect by his superiors. The Board points out he had personal problems at home, chronic frustration, excessive drinking and other nonservice-related problems.

DePuy was a member of the San Diego County Employees Retirement Association and entitled to the benefits of the County Employees Retirement Law of 1937 (ch. 3 [commencing with § 31450], pt. 3 of div. 4 of tit. 3, Gov. Code).

The referee appointed by the Board to hear evidence recommended the service-connected disability be granted. The Board elected to hear the entire matter and on September 17, 1976, issued its decision granting a nonservice-connected disability retirement but denying a service-connected disability retirement.[1] The superior court made the following significant findings of fact prompting the appeal:

---

[1] Benefits for service-connected disability generally result in payments of one-half of the employee's salary while benefits for nonservice-connected disability would result in payments of a lesser percentage of his salary (Gov. Code §§ 31726.5, 31727.2, 31727.4).

"10. The evidence reflects an infinitesimal connection between the stress incurred during the employment and petitioner's psychiatric disability.

"11. Petitioner's written statement entitled 'Summary Of My Job Stresses While A Deputy Sheriff For The County of San Diego,' together with the other evidence in the record, reflect a minimal amount of stress, but nonetheless, such minimal amount of stress constitutes a contributing cause of petitioner's disability."

The trial court expressly stated it was relying on *Heaton v. Marin County Employees Retirement Bd.,* 63 Cal.App.3d 421 [133 Cal.Rptr. 809], and came to the following conclusion of law:

"2. The principle enunciated in *Heaton* is that when an employee becomes incapacitated to perform his or her duties and such incapacity *in any way* arises out of and in the course of the employment, the employee is entitled as a matter of law to a service-connected disability retirement. Thus, even an inconsequential connection or any minimal nexus between the duties and the incapacity complies with the service-connected causality requirement. In effect, no substantial quantitative amount of service-connected causality is needed as a threshold and any minimal amount of causality will satisfy the requirement.

"3. Hence, because the evidence here meets such requirement of infinitesimal causality, petitioner *is entitled to a service-connected disability retirement."*

Unfortunately, the record on appeal is not complete. The appellant has not provided us with a reporter's transcript of the superior court proceedings but only requested certain documents which had been offered into evidence. After reviewing the entire file and the minutes of the trial court we have concluded the exhibits contain all the evidence relied on by the Board and available to the trial court. The need for early resolution of the issues presented in this case, the importance of resolving the legal issues for the benefit of bench and bar as well as this and other retirement boards, and the fact we have before us all the evidence presented to the trial judge make it appropriate for us to proceed.

At the outset we should point out *Strumsky v. San Diego County Employees Retirement Assn.,* 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29], establishes that retirement benefit rights similar to those subject of

this cause are fundamental and vested and properly call for determination by the court through the exercise of its independent judgment on the evidence produced before the Board (*Strumsky, supra,* at p. 46).

■ The Board contends the court erred in holding an infinitesimal, inconsequential causal connection between the duties of the employment, and the incapacity satisfies the requisites of Government Code section 31720, subdivision (a)[2] and requires granting the award. We agree.

The trial court interpreted *Heaton* v. *Marin County Employees Retirement Bd., supra,* 63 Cal.App.3d 421, as saying that an infinitesimal amount of causation is sufficient to justify the award under the language of Government Code section 31720, subdivision (a).[3] We do not read the case as standing for that principle.

In *Heaton, supra,* much like DePuy for a time, the employee worked in the county jail for the sheriff's department. She was a matron and was required to take care of female prisoners. She was compelled to do "dirty work," threatened with physical violence from the prisoners, required to work split shifts with irregular hours. As a result of this treatment, Heaton became nervous and upset, she could not sleep, perspired profusely, vomited and suffered diarrhea. The trial court found the disability arose from a variety of causes but that a *part* of the cause arose from the employment.

The appellate court in *Heaton, supra,* made this observation: "In support of its contention, appellant first maintains that Government Code section 31720 by its very language indicates that the circumstances of retirement disability should be limited to only the most extreme cases.

---

[2]"Section 31720 of the Government Code provides in pertinent part as follows: 'Any member permanently incapacitated for the performance of duty shall be retired for disability regardless of age if, and only if: [¶] (a) His incapacity is a result of injury or disease arising out of and in the course of his employment, or [¶] (b) He has completed five years of service, and [¶] (c) He has not waived retirement in respect to the particular incapacity or aggravation thereof as provided by Section 31009.'" (*Heaton* v. *Marin County Employees Retirement Bd., supra,* 63 Cal.App.3d 421, 426.)

[3]As we have seen in footnote 1, *ante,* it was necessary for DePuy to come within Government Code section 31720, subdivision (a) in order to be eligible for the higher amount of retirement allowance for a service-connected disability (Gov. Code, § 31727.4). There is otherwise no problem concerning his eligibility for a nonservice-connected disability retirement pension since he had completed five years of service (Gov. Code, § 31720, subd. (b)) and there is no evidence of any waiver as prescribed by the statute (Gov. Code, § 31720, subd. (c)) (see *Heaton* v. *Marin County Employees Retirement Bd., supra,* 63 Cal.App.3d 421, 429).

Appellant cites to the language 'if, and only if' to demonstrate legislative intent in this regard. A closer look at this provision merely evidences the legislative intent that retirement disability be awarded 'if, and only if' the injury is *service-connected.* It does not in any way refer to some requisite seriousness of injury as a condition for disability retirement. The statute simply limits retirement disability to cases where the injury arose out of and in the course of employment." (*Heaton* v. *Marin County Employees Retirement Bd., supra,* 63 Cal.App.3d 421, 427.) We do not read this to mean, however, that an "infinitesimal" and "inconsequential" connection is sufficient. The court did say: "Appellant's final argument is basically that this court should rewrite Government Code section 31720 to require that the employment must be the *sole* cause where the permanent incapacity is due to mental, rather than physical disability. This, appellant contends, is because it is completely beyond the art of the psychiatrist to delimit causation of psychiatric disorders. Thus, in every case (such as here) where the symptomatology is somewhat subjective, the expert would as a matter of course conclude that a contributing cause was a preexisting condition, family life, or employment conditions. Appellant argues this works an unfair result under retirement law, since even an *infinitesimal* [italics added] contribution to the disability might require full compensation, whereas under workers' compensation law, an employer bears only his share of what he has been found to have caused." (*Heaton* v. *Marin County Employees Retirement Bd., supra,* 63 Cal.App.3d 421, 430-431.) The court's rejection of appellant's argument in that case does not warrant the conclusion an infinitesimal contribution requires the award of full compensation.

Infinitesimal is defined as capable of being made arbitrarily close to zero, immeasurably or incalculably small, and "inconsequential" is defined as not regularly following from the premises, irrelevant, inconsequent (lacking worth, significance or importance) (Webster's New Internat. Dict. (3d ed. 1968) pp. 1159, 1144). These words connoting a causal connection so extremely small it is incapable of measurement and of no relevance are not consistent with the purpose or spirit of the law. We appreciate the court's obligation to liberally construe the pension law so that beneficent results may be achieved (*Jorgensen* v. *Cranston,* 211 Cal.App.2d 292, 296 [27 Cal.Rptr. 297]) but the Legislature never expressed an intent the Board should give awards without real and substantial evidence of the requisite element providing a causal connection to justify the awards. We would concede the employment-related stress may be a very small part of the disability but if the stress of the job was *infinitesimal and inconsequential* we would have to conclude there

was no "substantial evidence" (i.e., real and measurable evidence) his incapacity was a result of injury or disease arising out of and in the course of the employment.

Drawing an analogy to the workmen's compensation which *Heaton, supra,* does, 63 Cal.App.3d 421, at pages 427-428 and page 430 (see also *Pathe* v. *City of Bakersfield,* 255 Cal.App.2d 409, 414-416 [63 Cal.Rptr. 220]; *Minor* v. *Sonoma County Employees Retirement Bd.,* 53 Cal.App.3d 540, 544 [126 Cal.Rptr. 16]), we note the rule in those cases is that while the disease must arise out of the employment—must be employment connected—a particular employment is not required to be the sole proximate cause of the disease. As long as the employment substantially and proximately contributed to it, the employer may be held liable for the full disability (*Colonial Ins. Co.* v. *Industrial Acc. Com.,* 29 Cal.2d 79, 83 [172 P.2d 884]). Warren Hanna in his text, 2 California Law of Employee Injuries and Workmen's Compensation (2d ed.) section 8.03[6][h], pages 8-30-8-31, discusses the liberality of the law accepting "almost any incidental, indirect, or merely contributory relationship or connection as a substitute for the 'proximate cause' required by the compensation law." In his footnote 62 of that section he calls attention to *Colonial Ins. Co.* v. *Industrial Acc. Com., supra,* which provides the authority for the cases in point that follow but states those cases relying on it have not faithfully used the words "substantially and proximately." We can find no case, however, which espouses the rule there need not be substantial evidence of some connection.

We must conclude while the causal connection between the stress and the disability may be a small part of the causal factors, it must nevertheless be real and measurable. There must be substantial evidence of some connection between the disability and the job. The trial court erred in its conclusion the law of California requires the award of service-connected disability retirement benefits where there is an "infinitesimal" and "inconsequential" connection between the pensioner's duties and his disability.

We turn then to the findings of fact. We find no substantial evidence to support the court's finding there is an *"infinitesimal"* connection between the stress incurred during the employment and petitioner's psychiatric disability. The reports of civil service examiners R.D. Cloyes, M.D., and Hubert A. Devine, M.D., make no reference, one

way or the other, to the causal relationship of his disability. Two psychiatrists said the stress is job related, one said it may be job related and one said there was no relationship. No evidence was presented which attempted to measure the degree of causal connection.

Peter Jones, M.D., in his letter dated June 17, 1975, said: "It is my impression that Mr. DePuy's disability is indeed related to the stresses and strains of his job and that these have been substantially contributory to his disability."

Dr. Stuart L. Brown, M.D., in his letter dated January 15, 1976, said: "In my opinion, as of the date of this dictation Deputy DePuy is moderately severely incapacitated by reason of a depressive neurosis, this neurosis being due predominantly to the stresses experienced by Deputy DePuy in line with his duties as a deputy sheriff." In his letter of June 9, 1975, he said: "My opinion is that the job stresses and strains *have* been a substantial contributing factor in connection with his disability. . . ." (Italics included.)

Benjamin B. Faguet, M.D., in his report of November 28, 1975, stated: "The duties of investigative undercover officer may have caused some stress in performance of work, however, excessive drinking materially contributed a major role in precipitating and aggravating the condition."

On the other side of the coin we have the report of David W. Barron, M.D., whose report of November 3, 1975, said: "It is my opinion that during the period of October of 1969 through July of 1974, his duties of a deputy sheriff did not contribute nor did they percipitate [*sic*], or aggravate, or accelerate the development of his condition."

It is apparent to us there is substantial evidence to support a finding of a "real or measurable" causal connection between DePuy's duties and his conceded disabilities; moreover, substantial evidence before the trial court would support a contrary finding. In such circumstances it is the duty of the trial court to weigh, to evaluate, the conflicting evidence and to exercise its "independent judgment" in determining whether that "real or measurable" causal relation does or does not exist. It would be inappropriate merely to strike the word "infinitesimal" from the finding leaving the rest of the language because it might lead to an unintended result.

Judgment reversed with directions to conduct further proceedings consistent with this opinion.

Staniforth, J., and Wiener, J., concurred.

A petition for a rehearing was denied December 18, 1979, and respondent's petition for a hearing by the Supreme Court was denied January 24, 1979.